## COLLIER & PETTUS v. BUDD.

The bona fide vendors of a bill of exchange, on which the endorsement of the payee is forged, are entitled to notice of the dishonor of the bill. To entitle the holder to recover from the vendors, he must use reasonable diligence : What is reasonable diligence, must depend upon the circumstances of the particular case.

Appeal from St. Louis Court of Common Pleas.

GEYER for Appellants.

GAMBLE for Appellee.

*Opinion of the Court, delivered by Tompkins, Judge.*

Some time early in the month of March, 1839, Collier and Pettus sold to Budd a draft for one thousand dollars. This being found to be endorsed in the name of the payee, without his authority, Budd, in the month of July, 1841, commenced this suit against them, to recover the money which he had paid them for the draft. He obtained a judgment against them in the court of common pleas, and they now appeal to this court to reverse the judgment. The draft is as follows:

"Cashier Canal Bank, Albany, pay to the order of Elisha Bentley, &c. one thousand dollars, at the Bank of the State of New York."

After Budd bought the draft he wrote over the name of Elisha Bentley, endorsed on the back of the draft, these words : "Pay to the order of John B. Budd." The draft was afterwards endorsed by several others. It was enclosed in a letter, addressed to Collier & Pettus, by William D. Aber-

MAY TERM, nathy, at that time postmaster at Augusta, Hancock county,
1842. Illinois, and he was admitted to be then of good reputation.
Collier & Pet- Abernathy professed to be the agent of Bentley, and request-
tus v. Budd. ed this draft, with two others of five hundred dollars each,
to be sold by the defendants, and the money to be sent by
mail to him at his office. This was done accordingly. Col-
lier and Pettus admitted that they received two per cent.
premium on the draft : and it was proved that they did much
business in the way of buying and selling bills of exchange.
In short, it does not appear that there was any thing of un-
fairness or impropriety of conduct in the whole affair on
either side.

The defendants prayed the following instructions :

First, If the jury believed from the evidence that the
plaintiff had good reason to conclude from what took place
between the plaintiff and defendants, that the defendants did
not intend to be responsible for the genuineness of the draft,
or of its endorsement, they must find for the defendants.

Second, If they believed from the evidence that the de-
fendants on selling the draft were mere agents; that at the
time they disclosed to the plaintiff their principal, and that
they had paid over to that principal the money received for
the draft, before they knew of the forgery of the endorse-
ment, then they must find for the defendants.

The defendants asked other instructions not thought ma-
terial to be noticed.

These instructions were refused, and the court instructed
the jury, that if they believed that the defendants were
dealing in the buying and selling of bills of exchange ; that
the plaintiff applied to them for the purchase of a bill ; that
the bill in question was bought by the plaintiff from the de-
fendants; that he paid them for it the amount of such bill,
with two per cent premium, and that the endorsement of
Elisha Bentley is a forgery, they will find for the plaintiff,
unless they believe that it was the agreement at the time,
that the defendants should not be responsible for the genu-
ineness of the draft, or of its endorsement. The defendants
excepted to the instructions given, and to those refused.

The defendants counsel insist, that when a man passes a

bill by delivery, he does not make himself responsible for its goodness. To sustain this position, Fenn v. Harrison, 3 Term Rep. p. 759, is cited. That case, and others cited, re- fer to genuine bills, not forged bills, nor to genuine bills, the first endorsements of which are forged. If the bill be genuine, and endorsed by the payee, the bearer may be supposed to take it on the credit of the maker and payee. But it does not necessarily follow, that the bearer has received it with the risk of its being forged ; dor does it seem to me that, because the defendants are dealers in bills of exchange, and receive a compensation for them, they are therefore liable when they sell a forged bill. The merits of the case must turn on the right a vendor may have in any case to notice of the dishonor of a bill, the endorsement of which is forged, as in this case. No authorities in point have been produced.

In the case of the Bank of the United States v. the Bank of Georgia, a case to which I am referred by Judge Scott, it was decided, that the Bank of Georgia was guilty of negligence, in holding for nineteen days forged notes of its own, which had been paid in by the Bank of the United States, 10 Wheaton, 333. It was held that the Bank was bound to know her own notes, and ought to have informed the Bank of the United States in a shorter time. Mr. Justice Story says, "We may lay out of the case all consideration of the point, how far the defendants would be liable if these notes had been the notes of any other bank, deposited by the plaintiff in the Bank of Georgia as cash. The modern authorities, certainly, do in a strong manner assert, that a payment received in forged paper or base coin is not good ; and if there be no negligence in the party, he may recover back the consideration paid for them, or sue upon his original demand ;" and he cites authorities. "The holder," he says in in another place, "after a considerable lapse of time may not be able to ascertain from whom he received them, or the situation of the other parties may be essentially changed."

Even in relation to forged bills of third persons received in payment of a debt, (he adds,) there has been a qualification engrafted on the general doctrine, that notice and return

MAY TERM.
1842.

Collier & Pettus v. Budd.

must be within a reasonable time; and any neglect will absolve the payee from responsibility.

If, in the language of Mr. Justice Story, we apply the doctrine of negligence to the present case, there are circumstances strong to show a want of due diligence on the part of the plaintiff in this cause. This draft was sold to him two years and nearly six months before the commencement of this action, which is the first evidence of notice to the defendants. In the meantime Abernathy, who appears to have been a man of fair character, and filling a responsible office under the government, may have absented himself from the United States; his circumstances, if he still reside in the State of Illinois, may be essentially changed. And it may be asked, had the plaintiff, and those to whom he may be responsible in this affair, no better means of knowing of this forgery of the endorsement of Bentley's name, than the defendants? It cannot be presumed that in so long a time, this bill has not been presented for payment at the bank where it was made payable. "H. W. Frigen, teller," is endorsed on the draft, and the witnesses examined say, that they understand by this endorsement that the draft has been paid at the bank of which this man is teller. The presumption then is, that he was teller of the bank where the draft was payable; and the bank officers must be presumed to know the signature of Bentley, its customer; or at all events, to have the best means of knowing it, and of detecting the forgery. It does appear to me probable that the draft was presented for payment in less than three months. Bentley, the payee, apparently residing in Illinois, would probably in less than three months after that draft was sold by Collier and Pettus in St. Louis, have informed the bank of his failure to receive the draft by mail, and in that event his name on the bill would have been presumed to be forged, and consequently we should not have seen the name of the teller on it. But independently of the teller's name, the presumption is strong that the bill was presented for payment in a short time after it was sold by the defendants; and if in any case, the fair vendors of a forged bill, or of a genuine bill the endorsement of which is forged, be entitled to notice, the de-

The bona fide vendors of a bill of exchange, on which the endorsement of the payee is forged, are entitled to notice of the dishonor of the bill. To entitle the holder to recover from the

fendants in this cause may fairly claim it. It is not sufficient, in my opinion, to preclude them from the right of notice, that they were dealers in the buying and selling of bills of exchange, and that they receive a premium. No evidence is seen on the record to warrant the instructions asked by the counsel of the defendants, but the court of common pleas, in my opinion, committed error in giving its own instruction to the jury. The jury ought, it is thought, to have been told, that reasonable diligence should have been shown by the plaintiff, or those who endorsed after he transferred it; and what is reasonable diligence, may depend on the circumstances of the particular case.

*MAY TERM. 1842.*

*Collier & Pettus v. Budd.*

*vendors, he must use reasonable diligence. What is reasonable diligence, must depend upon the circumstances of the particular case.*

The judgment of the court of common pleas is reversed, and the cause remanded.

### Opinion of Scott, Judge.

On the authority of the case of the Bank of the United States v. the Bank of Georgia, I am in favor of reversing the judgment of the court below.

*(Judge Napton, dissenting.)*