BANK OF COMMERCE OF KANSAS CITY, Appellant, v. DOMENICO GINOCCHIO ET AL., Respondents.

St. Louis Court of Appeals, November 8, 1887.

1. NEGLIGENCE—DAMAGES.—The rule that, where one of two innocent persons must suffer, the loss must fall on him by whose negligence the injury came, applies only where the damage is the proximate result of the negligence.

2. —— PROXIMATE AND REMOTE.—A petition which charges that a draft, payable to a person of a common name residing at another city, was mailed to such person at said city, without any street address ; that the same was not delivered to the payee, but to another person bearing the same name, and who fraudulently sold the same to the plaintiff for value, without notice, states no cause of action, the connection between the defendant's negligence (if any) in sending the draft, and the plaintiff's loss, being too remote.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Affirmed.*

Pattison & Crane, for the appellant : Where an
act may be performed in two ways, one of which may
result in injury to others who may be affected, and the
other is free from such liability, the person performing
the act must take that course which will prevent the in-
jury. *International Bank v. German Bank*, 71 Mo.
183, 197; *Heaven v. Pender*, 11 Q. B. Div. 503; Cooley
on Torts, 630; *Brown v. Railroad*, 49 Mich. 153. It is
no defence that the defendants were actually innocent
in the matter. *Bank of Kentucky v. Schuylkill Bank*, 1
Pars. Eq. 241; *Lickbarrow v. Mason*, 2 T. R. 63. Nor
is it necessary that there should be privity between the
parties. *Gas Co. v. Robinson*, 99 Pa. St. 1; *Binford v.
Johnson*, 82 Ind. 426. The principle applies to transac-
tions connected with negotiable paper. *International
Bank v. German Bank*, 71 Mo. 183; Byles on Bills, 80;
*Yates v. Nash*, 39 L. J. C. P. 306; *Young v. Grote*, 4
Bing. 253; *Brown v. Reed*, 79 Pa. St. 370.

Broadhead & Haeussler, for the respondents :
The purchaser of a draft must look to and know the
vendor. If he purchases from a thief or forger, he does
so at his peril, and can not hold the true owner for negli-
gently losing the draft. *Mead v. Young*, 4 Term. Rep.
11; also cited in Byles on Bills, 80.

Thompson, J., delivered the opinion of the court.

This is an action for damages for negligence. The
circuit court sustained a demurrer to the petition, and
the plaintiff appeals. The petition is as follows: "The
plaintiff states that it is, and was, at all the times herein-
after mentioned, a corporation, carrying on the business
of banking in the City of Kansas, state of Missouri ; that
the defendants, Domenico Ginocchio, David Ginocchio,
and Louis Boggianna, are now, and were, at the times
hereinafter mentioned, partners, doing business in the

city of St. Louis, in said state, under the style and firm name of Ginocchio Brothers & Company.

"The plaintiff states that, on or about the fourth of October, 1886, the defendants obtained from the Fourth National Bank, of the city of St. Louis, aforesaid, a draft, or bill of exchange, drawn by said Fourth National Bank, in favor of the defendants, by their firm name aforesaid, on the Chatham National Bank, of the city of New York, for two thousand dollars; that said draft read as follows:

"$2,000.          The Fourth National Bank of St. Louis. "Duplicate unpaid.        St. Louis, Mo., Oct. 4, 1886.

"Pay to the order of Ginocchio Bros. & Co. Two Thousand $\frac{000}{100}$ Dollars.

"To Chatham National Bank,  |  J. W. BIEBINGER, "No. 261026. New York City.  |        Cashier."

"The plaintiff states that the defendants wrote on said draft or bill of exchange, the following endorsement: 'Pay to the order of Harry Jones. Ginocchio Bros. & Co.,' and enclosed it in a letter addressed as follows: 'Harry Jones, Kansas City, Mo.', without any addition, indicating the occupation, profession, residence, or place of business of the Harry Jones for whom said draft was intended; that said letter, with said draft enclosed, was received by a person in Kansas City named Harry Jones, and said draft was endorsed in blank by the person so receiving it, and duly negotiated by him for value. And the plaintiff says that said draft, so endorsed by Harry Jones, was offered to the plaintiff for sale, by the holder thereof, in due course of business; that the plaintiff, knowing the signature of Harry Jones, and that the said draft was, in fact, endorsed by a person of that name, purchased the same, and paid therefor the full face value thereof; that it thereupon received said draft, and without delay forwarded it to its correspondent in the city of New York, to be by said correspondent collected from said Chatham National Bank.

"The plaintiff states, however, that before said draft

was received in New York, the said Fourth National Bank of St. Louis had issued to the defendants a duplicate thereof, upon the representation by the said defendants that the Harry Jones to whom they had endorsed and mailed the same had not received it; and said duplicate draft was ʊ̠paid by said Chatham National Bank before there had been time, in the due course of business, for the presentation for payment of the draft held by the plaintiff; and the said Chatham National Bank, therefore, refused to pay the draft held by the plaintiff, and by reason of the premises and the acts of the defendants, aforesaid, the same has never been paid.

"The plaintiff further alleges that the defendants, prior to the endorsement by them of said draft and the mailing of the same to Kansas City, had had frequent business transactions and much correspondence with the Harry Jones to whom they intended to endorse said draft; that said business transactions and correspondence had extended over a long period of time, and they well knew the street and number in said Kansas City at which their correspondent, Harry Jones, did business at said time, as well, also, as his residence and occupation, and they also well knew, or might, by reasonable diligence, have ascertained, at the time when they endorsed said draft to Harry Jones, that there were in Kansas City at that time more than one person by the name of Harry Jones; and, further, the defendants well knew that, in order to obtain the money on said draft, the same would be negotiated with some bank or banker in the said City of Kansas; yet, notwithstanding their knowledge of these facts, did nothing whatever to identify, point out, or make certain the particular Harry Jones to whom it was intended that the said draft should be endorsed and delivered; nor did they, in addressing the letter enclosing said draft, in any way whatever identify or point out, either by location, occupation, profession, or otherwise, the Harry Jones to whom it was intended that said letter and draft should be delivered. The plaintiff says that

they thus negligently, carelessly, and wrongfully put it in the power of some person of that name, other than the one intended by them, to obtain possession of said letter and draft, well knowing that the plaintiff, or any other bank with whom said draft might be negotiated, had no means of determining the particular Harry Jones who was intended by the defendants, except by the mere fact of possession of the draft. The plaintiff states that it used all the means of identification in its power, and that the name of the person endorsing the draft was in truth and in fact Harry Jones ; that it had no other means of knowing the person intended as endorsee by the defendants than the identity of name ; that it had every reason to believe, and did believe, that the person from whom they purchased said draft was *bona fide* the legal owner thereof, and that, owing to the negligence and carelessness of the defendants as above stated, and while itself exercising the utmost care and due diligence, it was misled and entrapped into purchasing negotiable paper, the payment of which was stopped by the defendants, because, as alleged by them, the party endorsing it was not the one intended by them as their endorsee.

"The plaintiff says that, by reason of the premises, and of the said acts, negligence, and want of due care of the defendants, the said draft is of no value whatever, and the defendants are legally bound to make good to the plaintiff the amount paid by it for said draft. Wherefore the plaintiff asks judgment for said sum of two thousand dollars, and interest thereon from date of suit."

We are of opinion that this petition states no cause of action. It is not necessary, in so holding, that we should impugn the correctness of several of the general propositions argued by the plaintiff's counsel, as that, where an act may be performed in two ways, one of which may result in injury to others who may be affected, and the other is free from such liability, the person performing the act must take that course which will prevent injury ; that it is no defence to an action

grounded upon such an injury that the defendant was
really innocent, that is, that he was not guilty of bad
faith; that it is not necessary, in order to sustain such
an action, that there should be privity between the par-
ties; and that these principles, within certain limits, ap-
ply to transactions connected with negotiable paper.
But we do not understand that the case set forth in the
above petition is one to which these principles can be
applied.

Confessedly, there is no controlling authority upon
which we can decide this case. The only decision of our
Supreme Court, which is cited to us on behalf of the
plaintiff, is the case of *International Bank v. German
Bank* (71 Mo. 183). That case holds, that a blank en-
dorsement of a non-negotiable certificate of deposit by
the payee thereof, accompanied by delivery, will enable
the holder to make a valid pledge of this certificate to
an innocent party, without reference to the equities be-
tween himself and the payee. The reason upon which
the court proceeds, is, that the person to whom such a
certificate is offered as a pledge is authorized, by the act
of the owner in endorsing it in blank, to infer that the
holder is the absolute owner and that he may rightfully
pledge the same. The propriety of this conclusion is
perfectly obvious. The holder of the certificate has put
it into the hands of the pledgeor with an ear-mark or in-
dex of absolute ownership upon it, and if the latter
transfers it in pledge to an innocent taker, the real owner
is estopped by his own conduct from setting up his own-
ership to the prejudice of such taker, but that principle
has no application whatever to this case. Here the de-
fendants never put the paper into the hands of the per-
son who committed the fraud, and never knew of the
existence of such person.

Nor does *Yates v. Nash* (29 L. J. C. P. 306), touch
the question under consideration.

In *Young v. Grote* ( 4 Bing. 253), to which we are
cited by the plaintiff, the customer of a banker deliv-

ered to his wife certain printed checks signed by himself, but with blanks in the same, requesting her to fill up the same according to the exigencies of his business. She caused one of them to be filled up with the words, "fifty pounds, two shillings," the fifty being commenced with a small letter and placed in the middle of the line; the figures "£50 2 S." being also placed at a considerable distance from the printed "£"; and in this state delivered the check to her husband's clerk to receive the amount from the banker. He inserted, at the beginning of the line in which the word "fifty" was written, the words "three hundred and," and also inserted the figure "3" between the "£" and the "50." The bankers having paid the three hundred and fifty pounds, two shillings, it was held that the loss must fall upon the customer. The decision was put upon the ground of the negligence of the customer in leaving a check thus signed in blank with his wife, who was not acquainted with business, and who did not understand the importance of so filling it up as to render an alteration difficult. But that case is quite unlike the case under consideration. A privity existed between the customer and the banker. The customer had put it into the power of his own servant to defraud the bank by altering the check, and he had, through his wife, intrusted the check to the very person who committed the fraud, for whose honesty he impliedly vouched to the banker. The question, then, was whether the bank or the customer should suffer the loss, and it was held, on obvious grounds, that the customer should suffer it. Although the judges did not so reason, the case was governed by the principle that where one of two innocent persons, that is, persons who have acted in good faith, must suffer a loss through the fraud of a third, the loss should rather fall upon him whose negligence enabled the third person to commit the fraud. If the petition in the case before us states a cause of action, it is because it states a case within this principle. But,

though it is a principle that has been very sparingly applied by the courts, we may concede, at least for the purposes of this argument, that it has been properly applied in a class of cases like that of *Brown v. Reed* (79 Pa. St. 370), and cases there cited, which hold that, where the maker of a negotiable instrument issues it in such a form that it can be easily altered, and it is altered by the fraud of some one into whose hands it has come, whereby he has been enabled to defraud an innocent taker, the maker, and not the innocent taker, must bear the loss.

But the plaintiff in the present action asks us to extend the principle further, and to hold that a merchant who buys, of a banker, a negotiable bill of exchange for the purpose of transmitting it to a customer in a neighboring city, must, in order to guard the banking community against possible fraud, anticipate and provide against four contingencies : (1) That there may be other persons in the same city as its customer of the same name ; (2) that the post-office agents may deliver the draft to such other person ; (3) that such person will be sufficiently dishonest and will have the hardihood to commit a forgery (for it is a forgery, *Meed v. Young*, 4 T. R. 28), by endorsing his name upon it, and personating the real owner ; and (4) that the forger will be enabled to convince some banker that he is the real owner and to sell it to him. We do not think that it is actionable negligence in a merchant or a dealer not to anticipate and provide against such remote contingencies. On the contrary, it is more just to require the banking community so to act in the conduct of their business as to protect themselves against such losses. A banker is not bound, like a common carrier, to receive the commodities which he handles from any one who may tender them, but he may ordinarily protect himself against frauds of this kind by refusing to purchase negotiable paper of strangers, and by confining himself in such purchases to customers of known honesty or of good repu-

tation.   The case is governed by the principles which
judges and law writers class under the head of proxi-
mate and remote cause.  It is to be referred to the
maxim, *causa proxima, non remota spectatur*.   The
rule is, that a man shall not be held to pay damages be-
cause he has failed to guard the world against those
consequences of his acts or omissions which are contrary
to ordinary experience and which ordinary care would
not anticipate.   The rule is founded upon two reasons.
The one has reference to the infirmity and imperfection
of all human thought and action, toward which the law
must extend some indulgence ; the other rests upon the
consideration, that if the law were to make men answer-
able for the happening of such remote events, litigation
would be endless.   Confessedly, no precise rule can be
laid down by which to determine when damages which
have followed a given act or omission through an inter-
mediate chain of events shall be deemed proximate and
when remote in a juridical sense ; but we have no diffi-
culty in saying that the damage stated in this petition
must be excluded from the category of damages for
which the law gives a right of action.

The judgment of the circuit court will be affirmed.
It is so ordered.   All the judges concur.