S. D. ROSSI, Appellant, v. THE NATIONAL BANK OF COMMERCE IN ST. LOUIS, Respondent.

St. Louis Court of Appeals, May 4, 1897.

1. **Commercial Paper**: DRAFT: ACCOMMODATION INDORSEMENT TO ESTABLISH IDENTITY OF PAYEE: EFFECT OF. The accommodation indorsement of a draft by a party to establish the identity of the person presenting it, as payee therein, is a warranty on his part to the person receiving the draft that the person presenting it is entitled to the proceeds.

2. ———: ———: LIABILITY OF BANK UPON INDORSEMENT "FOR COLLECTION ACCOUNT." The indorsement by a bank of a draft with the words "for collection account," added, simply restricts the future negotiability of the draft, it does not release the bank from the obligation assumed—from its warranty *that* the payee's indorsement is genuine.

3. ———: ———: FORGED INDORSEMENT OF PAYEE: NOTICE: LIABILITY OF ACCOMMODATION INDORSER TO ESTABLISH IDENTITY OF PAYEE. Where a party indorsed a draft to establish the identity of the payee therein, upon the discovery of a forgery of the indorsement of the payee, no protest or notice thereof was necessary to fix his liability upon his warranty of the genuineness of the payee's indorsement; a reasonable notice to him of the forgery was sufficient.

4. ———: ———: ———: ADDITIONAL OFFENSE. The fact that a party forging the indorsement of a draft was guilty also of obtaining money under false pretenses, did not exonerate an accommodation indorser to establish the identity of such party, from his warranty of the genuineness of the indorsement.

5. ———: APPROPRIATION OF DRAFT MAILED BY BANK: NEGLIGENCE. Where a bank, believing it was acting under instructions from its customer, sent a draft by mail, directed to the address of the customer, which was delivered by the postoffice officials to another party having the same name, who appropriated the draft and obtained the proceeds upon a forged indorsement, there was no negligence on the part of the bank.

*Appeal from the St. Louis City Circuit. Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Verde V. Hardcastle, Thomas B. Estep*, and *James M. Borton* for appellant.

The draft in question was a foreign bill of exchange, being drawn in the state of Connecticut upon the bank in New York. *Dickens v. Beal*, 10 Pet. 572; *Bank v. Daniel*, 12 *Id.* 32; *Phoenix v. Hussey*, 12 Pick. 483; *Buckney v. Finey*, 2 Pet. 586; *Bank v. Varnum*, 59 N. Y. 269.

Was appellant an indorser? If so, the law of the place of payment determines the requirement as to protest. This draft was payable in New York, hence the law of that state governs. *Ins. Co. v. Simmons*, 52 Mo. App. 357; *Stix v. Mathews*, 63 *Id.* 357; *Tyrell v. R. R.*, 7 *Id.* 297; *Roach v. Type Foundry*, 21 *Id.* 121; *Bank v. Barksdale*, 36 Mo. 563.

The draft being a foreign bill of exchange protest was indispensable to the recovery against the indorser. *Halliday v. McDougal*, 20 Wend. 81, 264; *Denniston v. Steward*, 17 How. (U. S.) 606; *Bank v. Varnum, supra; Susquahanna v. Pickering*, 19 Hun, 230; *Bank v. Loomis*, 85 N. Y. 207. See, also, *Hall v. Newcombe*, 7 Hill, 416; *Spies v. Gilmore*, 1 Const. 321.

The *gravamen* of the acts of Mrs. Eliza May, No. 1, was not forgery, but obtaining money under false

pretenses.    R. S. 1889, secs. 3564, 3567; *Robertson v. Coleman*, 141 Mass. 231; *Hoge v. Bank*, 18 Ill. App. 501; *United States v. Bank*, 45 Fed. Rep. 163.

The draft was paid to the proper party. The fraud is an equity, which in commercial paper is, as against a *bona fide* holder, no defense.    The New Haven Bank was swindled, and must stand the loss.    *Wilson v. Express Co.*, 27 Mo. App. 367; *Samuel v. Cheney*, 135 Mass. 238.

"Where one of two innocent persons must suffer for the wrongful act of another, he must suffer who placed the party doing the wrong in a position to do it."    *Shirts v. Overjohn*, 60 Mo. 311; *Ayers v. Milroy*, 53 *Id*. 316; *Lee v. Turner*, 89 *Id*. 489; *Newhoff v. O'Reily*, 93 *Id*. 164; *Bank v. Bank*, 71 *Id*. 197; *Thompson v. Logan*, 42 Mo. App. 153; *Dymmock v. R. R.*, 54 *Id*. 409; *Cowgill v. Petfish*, 51 *Id*. 264.

The New Haven bank was negligent, had no right to look to others to see that the proper payee was identified by other parties dealing with the draft.    *Shoe & Clothing Co. v. Crosswhite*, 124 Mo. 34; *Stout v. Benoist*, 39 *Id*. 277; *Bank v. Bank*, 30 Md. 2; *DeFerril v. Bank*, 23 La. 310; *Kansas v. Mathews*, 10 L. R. A. 303, and citations.

*Albert Arnstein* for respondent.

The restricted indorsement "for collection" notified all parties thereafter dealing with the paper that the indorsee was merely the indorser's agent for the purpose of making collection.    Such indorsement did not have the effect of notifying subsequent holders that the indorser "for collection" himself held the paper for collection.    *United States v. Bank*, 70 Fed. Rep. 222; *Bank v. Bank*, 107 Mo. 402, 412; *Bank v. Bank*, 76 Hun, 475; *Ins. Co. v. Bank*, 60 N. H. 442; *Bank v. Bank*, 30

N. E. Rep. (Ind.) 808; *Crane, Parres & Co. v. Bank*, 173 Pa. St. 576; *Rhodes v. Jenkins*, 31 Pac. Rep. (Col.) 491.

The effect of defendant's indorsement "for collection" simply restricted the further negotiation of the draft, but did not release the defendant from the contractual obligation assumed by every indorser, viz., a warranty that the payee's indorsement is genuine. *Bank v. Bank*, 107 Mo. 402, 413; *Ins. Co. v. Bank, supra; Bank v. Bank*, 4 Ind. App. 355, affirmed in 36 N. E. Rep. 362; *Rhodes v. Jenkins, supra; Bank v. Bank*, 76 Hun, 475.

When Rossi indorsed the draft in blank for accommodation, he assumed all the obligations of an indorser, which included a warranty of the genuineness of the payee's indorsement. Danl. on Neg. Insts., secs. 192, 669; *Whittemore v. Obear*, 58 Mo. App. 286; *Minners v. Conner*, 22 Alb. Journal, 156; *Singer v. Dickneite*, 51 Mo. App. 249; *Turnbull v. Bowyer*, 40 N. Y. 456; *Bank v. Bank*, 76 Hun, 475; *Aronson v. Abrahamson*, 16 Daly, 72; *Brown v. Ames*, 61 N. W. Rep. 448; *Bank v. Bank*, 55 N. Y. 211; *White v. Bank*, 64 N. Y. 316; 2 Morse on Banking, sec. 477, and notes; Big. on Bills, p. 166.

No protest or notice thereof was necessary to fix Rossi's liability upon the discovery of the forgery, he became liable upon his warranty, notice of the fraud having been given to him within a reasonable time. *Bank v. Allen*, 59 Mo. 310; *Collier v. Budd*, 7 *Id.* 485; *Bank v. Bangs*, 106 Mass. 441; *Ins. Co. v. Bank*, 60 N. H. 442; *Turnbull v. Bowyer*, 40 N. Y. 456.

Rossi's request not to pay the draft until defendant ascertained that it was "good," was strictly complied with. By his indorsement he vouched for the genuineness of the payee's indorsement. *Espy v. Bank*, 18 Wall. 604.

Where, through accident or theft, a draft payable

to a third party falls into the hands of another having the same name, the indorsement of the draft by the latter is a forgery and passes no title. *Bank v. Bank*, 7 Ind. App. 322; *Bank v. Bank*, 76 Hun, 475; *Rhodes v. Jenkins*, 31 Pac. Rep. 661; *Bank v. Ginocchio*, 27 Mo. App. 661; *Graves v. Bank*, 17 N. Y. 205; *Bank v. Hottschild*, 98 Ind. 85; *Kohn v. Watkins*, 26 Kan. 691; *Palm v. Watt*, 7 Hun, 317; *Mead v. Young*, 4 Term Rep. 28.

The New Haven bank was not guilty of negligence in forwarding the draft by mail to its customer. It is the identity of the person, and not the name, which controls the right to the draft. *Bank v. Bank*, 7 Ind. App. 322; *Armstrong v. Bank*, 46 Ohio St. 512; *Kohn v. Watkins*, 26 Kan. 691; *Dodge v. Bank*, 30 Ohio St. 1; *Palm v. Watt*, 7 Hun, 317. See also, *Bank v. Ginocchio*, 27 Mo. App. 661, 668.

BOND, J.—This cause was submitted to the court for decision upon an agreed statement of facts, to wit:

"Comes now the parties in the above entitled cause and agree to submit this case on the following statement of facts; hereby waiving all preparatory pleadings to arrive at the same and any variance between the pleadings now filed and this statement.

"It is agreed further, that the National Bank of Commerce, defendant herein, is, and was, at the time hereinafter mentioned, a corporation organized and existing under the laws of the United States of America, with authority to do business in the city of St. Louis, State of Missouri.

"That at the time below mentioned there were in the city of St. Louis, Missouri, two women of the same name, hereinafter respectively referred to as 'Mrs. Eliza May, No. 1,' and 'Mrs. Eliza May, No. 2.'

"That the said Mrs. Eliza May, No. 1, had lived in the city of St. Louis in the vicinity of this plaintiff's

place of business, at the northwest corner of Fifteenth and Market streets, and had gone under that name and had traded with plaintiff under that name for a period extending over at least (8) years, and that she had no account or money on deposit with the Mechanics Bank of New Haven. That the said Mrs. Eliza May, No. 2, was unknown to the plaintiff, came to this city during the month of January, 1896, from New Haven, Connecticut, and took up her residence at 4109 Finney avenue.

"That the said Mrs. Eliza May, No. 2, had on deposit in the Mechanics Bank of New Haven, Connecticut, deposited by her, and subject to her check, about the sum of twelve hundred ($1,200) dollars. That shortly after her arrival in the city of St. Louis, she forwarded her deposit book to the New Haven bank to be balanced and returned to her with the canceled checks which she had previously drawn, but did not give her house number; said bank book and canceled checks, under cover, addressed to 'Mrs. Eliza May, St. Louis, Mo.' (the book having been duly balanced showing the amount on deposit to her credit) was duly mailed by the bank.

"When the letter arrived in St. Louis, the post office officials delivered it to Mrs. Eliza May, No. 1, who thereby became apprised of the fact of the deposit in the name of Mrs. Eliza May, No. 2. Taking advantage of this information, she sent said bank, with intent to defraud it, the following telegram:

" 'St. Louis, Mo., January 23, 1896.
" 'Cashier Mechanics Bank, New Haven, Conn.

" 'Sir: Yours received, kindly send me nine hundred and seventy-five dollars and seventy-five cents. Waive identification.          Mrs. Eliza May.'

"The said bank, believing it was its depositor who had sent the telegram, upon receipt of same,

mailed under cover, addressed 'Mrs. Eliza May, St. Louis, Mo.', a draft of which the following is a copy:

" 'THE MECHANICS BANK.

" 'Incorporated 1824.          Charter Perpetual.

" 'NEW HAVEN, CONN., January 24, 1896.

" 'Pay to the order of Mrs. Eliza May, nine hundred seventy-five dollars and seventy-five cents ($975.75).   To Mercantile Bank, New York.

" 'CHAS. H. TROBRIDGE, Cashier.'

"Inclosed therewith was a letter worded as follows, to wit:                    JANUARY 24, 1896.

" '*Mrs. Eliza May*,

" 'As per your message of the 23d inst., we hand you herewith our draft on Mercantile National Bank of New York City for $975.75.'

"This letter containing the draft was delivered by the post office authorities to Eliza May, No. 1.

"The said Mrs. Eliza May, No. 1, had circulated the rumor, which had come to the plaintiff's knowledge, prior to her receiving the draft, that she was expecting a large remittance from the east.   She came to the store of the plaintiff at 1501 Market street on the twenty-eighth (28) day of January, 1896, and requested him to identify her name at the bank, showing the draft and envelope inclosing it to the plaintiff and arrangements were made between the two that when he went to the bank in the afternoon at 'about a quarter of three' that she would meet him there.

"She arrived at the bank before the plaintiff, and desired to have the draft cashed.   This the defendant refused to do unless Mr. Rossi, the plaintiff, indorsed it.   She was at the bank waiting when plaintiff arrived there, at about that time, plaintiff went to the desk with her, she having the draft in her hand.   She explained to the assistant cashier, Mr. Edwards, what she desired, showing and handing to him the draft.

Mr. Edwards asked the plaintiff if he 'knew the lady,' and he answered, 'yes, from about six to eight years.' He then told her to put her name right there, indicating the head of the back of the draft, which she did. He then told the plaintiff he would have to indorse it, and put his name there, indicating under hers, which plaintiff did. She then asked for the money; the plaintiff then said, 'don't pay her until you send it east and see if it is good.' To this she demurred, but when Mr. Edwards explained that a telegraphic reply could be had from New York in two days, she said, 'all right.' Thereupon Mr. Edwards referred plaintiff and Mrs. May, No. 1, to a clerk in the bank of whom Mrs. May No. 1 asked, how much will it be to send east. The reply was, about $1.75 to $1.90, and the draft was left with the clerk. The draft was then indorsed by the defendant as follows: 'Pay Messrs. Kountz Bros. or order, for collection account The National Bank of Commerce in St. Louis. Report by 9633, J. C. Van Blarcom, Cashier,' and forwarded by the defendant to its correspondent in New York, who presented it to the drawee, by which it was paid, the defendant was accordingly notified, and when Mrs. Eliza May called on January 30, 1896, the money was paid over to her, less the exchange, $1.40, and this was the last seen of her by either of the parties to this suit.

"That on February 4, 1896, defendant sent a representative to the place of business of the plaintiff requesting him to come to its place of business. This the plaintiff did, and he was then and there notified by Mr. Edwards that what he wanted was to see him about that draft, that there was something wrong, and Mr. Edwards told the plaintiff he had better go after her (referring to Mrs. May, No. 1) as it looked as though she had gotten away with money that did not belong to her, and that he (plaintiff) was responsible for it.

Plaintiff and Mr. Edwards thereupon looked up her address in the city directory and plaintiff went away to look for her, coming back shortly thereafter saying she had moved.   Neither plaintiff nor defendant have since been able to find or locate Mrs. May, No. 1, as she has left the city.

"No protest of the draft was ever made and the discovery of the circumstances of the fraud was brought about by the dishonor of a draft drawn by Mrs. Eliza May, No. 2, on the New Haven bank, presented to it for payment, and the subsequent inquiry with regard thereto, information of which reached the defendant February 4, and on said day communicated to plaintiff as above stated.

"It is further admitted that when the circumstances were discovered by the Mechanics Bank of New Haven it refused to credit the Mercantile Bank of New York, the drawee, with the amount paid by it, claiming the indorsement of Mrs. Eliza May 'a forgery,' that the drawee in turn charged up to the account of Kountz Brothers, the defendant's correspondent, the amount paid to them, and they in turn charged said amount to the defendant herein, and the defendant then charged the amount to plaintiff.

"On the nineteenth day of February, 1896, the defendant wrote a letter to the plaintiff, which was received by him, stating that it had charged to his account the amount of said draft, to wit, $975.75 out of the amount he had on deposit with it, on account of its claim against him, by reason of the facts above stated.

"This appropriation was never agreed to by the plaintiff; checks leaving the above balance in defendant's hands were duly honored by defendant.

"On February 20, 1896, plaintiff drew his check in writing, directing the defendant to pay to the order of Henry Krueger the sum of $950.   Said check was duly

presented at defendant's place of business for payment, which was refused by reason of the appropriation of the amount above stated by the defendant on account of its claim aforesaid."

Judgment was rendered for defendant, from which plaintiff duly perfected an appeal to this court.

The decisive question arising upon the agreed facts is single and simple. It is this: What was the effect in law of the indorsement by plaintiff of the draft, forwarded by the New Haven bank, payable to the order of Mrs. Eliza May? That plaintiff indorsed this draft to enable the person who held it, who had indorsed it, and called upon him to establish her identity as the payee therein to collect its proceeds, can not be questioned in the light of what was done and said at the time of the delivery of the draft to the St. Louis bank. This transaction established the status of plaintiff as the accommodation indorser of the Mrs. Eliza May, who held the draft, and whose right to receive the proceeds was questioned by the St. Louis bank, in the very act of requiring his indorsement of her identity before it would receive the draft from her. There is no logical escape from this conclusion, for if the Mrs. Eliza May who indorsed the draft to the St. Louis bank had been the real payee therein, her signature on the back of the paper would have transmitted the title. The only question, therefore, which that bank had to solve was her identity with the payee named in the draft. To guard against any mistake on this point, it took the precaution to require plaintiff's indorsement as an assurance that the prior indorsement of Mrs. Eliza May was that of the veritable payee mentioned in the draft. It is clear, therefore, that the legal effect of plaintiff's indorsement of the draft under the circumstances set forth in the agreed statement, was a war-

*DRAFT: accommodation indorsement to establish identity of payee: effect of.*

ranty on his part to the St. Louis bank that the woman presenting the draft was entitled to its proceeds.

The next inquiry is what was the effect in law of the indorsement of the draft, after delivery to it, by the St. Louis bank? That bank, after designating an indorsee or order, added the words, "for collection account," and subscribed its name by its cashier. The authorities in this state, as well as elsewhere, hold that the use of such terms constitutes a restrictive indorsement evidencing an intent to retain the proceeds and destroying the future negotiability of the paper. This indorsement was notice to all the world that the title to the draft was in the indorsee only as agent to collect, and would not pass as against the indorser except upon payment of the proceeds to him or his indorsee. By such an indorsement the indorser assumes ownership of the draft, and the drawee who pays it to the indorsee for collection is entitled to hold the indorser to the extent which an unrestricted indorsement would bind him as warrantor of prior indorsements. Of course, the drawee in such instance would have no recourse on the indorsee for collection. *N. W. Nat. Bank of Chicago v. K. C. Bank of Commerce,* 107 Mo. *loc. cit.* 413. These rules of law answer the argument of appellant, that the St. Louis bank, by its restrictive indorsement, became itself a mere agent to collect. Appellant's position in this respect is sought to be maintained by the suggestion that the terms "collection account" indicated that defendant kept an account of that kind for the payee, and had only assumed to act as her agent in transmitting the draft. This suggestion is without force for two reasons. *First,* to make defendant the collecting agent of the plaintiff, it would have been necessary for her to have indorsed the draft to it in the same

*DRAFT: liability of bank upon indorsement "for collection account."*

Rossi v. Nat. Bank of Commerce.

manner in which defendant indorsed it to its collect-
ing agent. This the agreed state of facts shows was
not done. *Secondly*, the terms employed by defendant
in its indorsement do not import that defendant kept a
collection account for the payee. On the contrary
those terms are a well known business abbreviation in
use by banks, for the expression "collection *for
account of.*" The italicized words being omitted
merely for brevity in stamping indorsements. Taking
the foregoing principles as a basis, it inevitably fol-
lows that the drawee (the New York bank) could not
charge its payments of the draft against the drawer
(the New Haven bank) because the indorsement of
the draft in the name of the payee designated therein
was a forgery, and the drawee having the right only
to pay the payee or her indorsee, could not charge the
drawer, in the absence of such a showing. *Shipman
v. Bank*, 126 N. Y. *loc. cit.* 327; *Clipper et al. v. Bank*,
51 Mo. App. *loc. cit.* 518. Hence as between the drawer
and the drawee, the loss fell upon the latter. As between
the drawee, however, and the St. Louis bank, the
latter is liable because its indorsement was a guaranty
of the prior indorsement of the payee, and likewise the
St. Louis bank was entitled to recourse on plaintiff,
since his indorsement, as has been shown, was made
to assure that bank that the antecedent indorsement
made by Mrs. Eliza May was that of the payee desig-
nated in the draft.

It is further insisted by appellant that plaintiff was
not answerable upon his indorsement because of the
failure to give him the notice which
DRAFT: forged in- indorsers are ordinarily entitled to receive.
dorsement of
payee; notice: There was no default either of acceptance
liability of ac-
commodation in- or payment entitling plaintiff to notice of
dorser to estab-
lish identity of dishonor of the draft. His liability rests
payee.
upon a different ground, that of warranty

of the genuineness of the signature of his antecedent indorser. In such cases there is no necessity for the demand and notice essential to hold him upon his engagement that the draft would be honored. Danl. on Neg. Ins., secs. 669 *et seq.* He was entitled to reasonable notice of the discovery of the forged character of the indorsement of the payee, and the agreed state of facts show that he received this notice. After that he became liable on his warranty. *Bank v. Allen*, 59 Mo. 310; *Collier v. Budd*, 7 Mo. 485; *Turnbull v. Bowyer*, 40 N. Y. 456.

Appellant also insists that the Mrs. May, who received the proceeds of the draft from the St. Louis bank, was guilty of obtaining money under false DRAFT: forged indorsement of payee: additional offense. pretenses. That may be conceded, but inasmuch as she uttered a forged instrument to accomplish this purpose, it is not perceived how plaintiff is exonerated from his warranty of the genuineness of her indorsement because she was guilty of an additional offense. Neither do we think that appellant is correct in assuming that the New Haven bank was the efficient cause of the APPROPRIATION of draft mailed by bank: negligence. loss. We fail to discover any negligence attributable to it under the agreed state of facts. Certainly it was not negligence to send a draft instead of transmitting by some other method not involving identification. Nor was there any negligence on the part of the New Haven bank in mailing the draft to its customer at St. Louis, Missouri. *Bank v. Ginocchio*, 27 Mo. App. 661. The result is that the judgment in this case must be affirmed.

All concur.